# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| WILLIAM B. LARION, | ) | CASE NO. 1:19-cv-2597 |
|---|---|---|
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| AIRCRAFT SERVICE INTERNATIONAL, INC., | ) ) ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to dismiss for improper venue or, alternatively, to transfer venue filed by defendant Aircraft Service International, Inc. ("Aircraft Service"). (Doc. No. 5 ["Mot."].) Plaintiff William B. Larion ("Larion") filed a brief in opposition (Doc. No. 8 ["Opp'n"]) and Aircraft Service filed a reply (Doc. No. 11 ["Reply"]). For the reasons set forth herein, the motion to dismiss is denied and the motion to transfer venue is granted.

## I.   BACKGROUND FACTS

Larion filed his complaint against Aircraft Service setting forth a single cause of action for wrongful discharge "premised upon federal and/or state common law/public policy." (Doc. No. 1, Complaint ["Compl."] ¶ 5.) The complaint alleges that Larion resides in Medina County, Ohio, and that Aircraft Service is a foreign corporation with its corporate headquarters located in Fort Worth, Texas. (*Id.* ¶¶ 1, 2.) Jurisdiction is based on diversity of citizenship. (*Id.* ¶ 3.) Venue is allegedly "proper pursuant to Title 28, Section 1391(b)(2) of the United States Code as the acts and/or omissions outlined in the claims alleged [ ] occurred within the jurisdiction of this Court." (*Id.* ¶ 4.)

Aircraft Service provides commercial aviation services to airlines and airports in North America, Europe, and Asia. (*Id*. ¶ 6.) Larion was hired by Aircraft Service in November 2006 for the position of Health, Safety, and Environmental Manager; he was subsequently promoted several times, holding the position of Director of Health, Safety, and Environment over defendant's United States operations at the time his employment was terminated. (*Id*. ¶¶ 7–10.) Larion claims to have been such a consistently "outstanding performer" that, on May 20, 2019, he received a salary increase based on his performance. (*Id.* ¶¶ 11, 17.)

Larion alleges that, on April 24, 2019, the Maryland Occupation Health and Safety Administration ("MOHSA") conducted an inspection of the Baltimore/Washington International Thurgood Marshall Airport ("BWI") concerning possible safety violations. (*Id*. ¶ 14.) On May 13, 2019, the Maryland Aviation Association issued a complaint to Aircraft Service regarding safety concerns at BWI. (*Id*. ¶ 15.) On May 27, 2019, Larion traveled to BWI to investigate a number of safety violations and employee complaints. (*Id.* ¶ 18.) On May 31, 2019, Larion submitted to his supervisors[1] a draft report regarding defendant's compliance with federal law at BWI, finding "a number of issues regarding safety[]" and outlining numerous "safety violations." (*Id*. ¶¶ 18–19, 24.) His final report was sent on June 1, 2019. (*Id.* ¶ 25.)

On June 10–11, 2019, while Larion was attending a staff meeting in Dallas, Texas, he was told by his superiors that he had a "'poor attitude'" and was "'not a team player.'" (*Id.* ¶¶ 26–27 (quotation marks in original).) On two occasions (June 20, 2019 and August 12, 2019), Larion was

---

[1] Larion alleges that his direct supervisor was David Keith ("Keith"), defendant's Senior Vice President of Risk, and that he was also supervised by John Redmond ("Redmond"), defendant's Executive Vice President over the United States operations. (Compl. ¶¶ 12–13.)

instructed not to attend meetings with MOHSA. In the interim, on July 11, 2019, MOHSA issued a citation to Aircraft Service, which included fines. (*Id*. ¶¶ 28–30.)

On September 17, 2019, Aircraft Service terminated Larion's employment in an alleged reduction-in-force; his was the only position eliminated. (*Id*. ¶¶ 31–32.) Larion alleges that Aircraft Service "retaliate[d] against [him] by terminating his employment for reporting what he reasonably believed threatened others [sic] safety in the workplace[.]" (*Id*. ¶ 36.)

## II.  DISCUSSION

### A.  Motion to Dismiss for Improper Venue

A motion to dismiss under Fed. R. Civ. P. 12(b)(3) is the procedural vehicle by which to challenge improper venue, but the requirements for venue are set by statute. *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). A civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Larion alleges in his complaint that "[v]enue is proper . . . as the acts and/or omissions outlined in the claims alleged . . . occurred within the jurisdiction of this Court." (Compl. ¶ 4.) This is apparently a reference to § 1391(b)(2).[2] The complaint actually alleges very little with

---

[2] It is undisputed that the defendant is not a resident of this district, although it has a statutory agent in Columbus, Ohio, within the Southern District of Ohio. Defendant has not challenged personal jurisdiction. It also is undisputed that defendant would be subject to personal jurisdiction in the Northern District of Texas.

3

respect to the locus of any of the acts or omissions it alleges. Aside from alleging that Larion is a citizen of the State of Ohio (Compl. ¶1) and Aircraft Service is a foreign corporation headquartered in Fort Worth, Texas (*id.* ¶ 2) (facts that are irrelevant for venue purposes), there are only two other locations mentioned in the complaint: Baltimore/Washington International Thurgood Marshall Airport (BWI) (*id.* ¶¶ 14–16, 18, 20), which the Court notes is in Maryland, and Dallas, Texas (*id.* ¶ 26).

Aircraft Service asserts that venue is "manifestly improper" in this district for several reasons, notably, that Larion, in his complaint, "does not identify a single action or omission that took place in Ohio." (Mot. at 36–37.[3]) Once venue is challenged, "the plaintiff bears the burden of establishing that its chosen venue is proper." *Conteyor Int'l, N.V. v. Bradford Co.*, No. 1:13 CV 2413, 2014 WL 172525, at *2 (N.D. Ohio Jan. 13, 2014) (citations omitted). If a case is filed "in the wrong division or district[,]" the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether to dismiss or transfer is within this Court's sound discretion. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

In resolving a question of venue, "[t]he Court may examine facts outside the complaint [for instance, facts contained in affidavits], but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002) (citation omitted); *see also Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Aircraft Service has submitted two declarations of D. Bradley

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

Keith.[4] (Doc. No. 5-1, Declaration of D. Bradley Keith (Dec. 17, 2019) ["Keith Decl. 1"]; Doc. No. 11-1, Declaration of D. Bradley Keith (Feb. 17, 2020) ["Keith Decl. 2"].) Larion has submitted his own declaration. (Doc. No. 8-1, Declaration of William B. Larion (undated) ["Larion Decl."].)

Aircraft Service raises several reasons why venue is improper. First, defendant argues that its corporate headquarters are in Fort Worth, Texas.[5] (Mot. at 36 (citing Compl. ¶ 2).) Second, defendant argues that none of the events giving rise to Larion's claims occurred in Ohio, but rather, "all such events occurred principally in Texas, with a few additional events occurring in Baltimore." (*Id.*) Aircraft Service claims that Larion's employment "was based at its corporate headquarters" in Fort Worth, Texas, not in any Ohio location. (*Id.*; Keith Decl. 1 ¶¶ 3, 13.) As with defendant's other senior leadership, Larion spent "nearly all of [his] time traveling to various airports to oversee and inspect operations and visit with customer representatives." (Keith Decl. 1 ¶¶ 5, 14.) Keith claims that, although Larion was permitted to work out of his home in Ohio upon occasion, "his official work location was at [d]efendant's U.S. headquarters in Texas." (*Id.* ¶ 15.) Defendant argues that, other than Larion's residence, there is no connection to Ohio, and the complaint fails to identify a single act or omission that occurred in Ohio. (Mot. at 37.) All of Aircraft Service's administrative functions (e.g., payroll and human resources) are performed at its Texas headquarters and the Senior Vice President, Human Resources (Martin Harrell) works out of the Texas headquarters. (Keith Decl. 1 ¶ 10.) The decision by senior management to terminate Larion's employment as part of a corporate reorganization took place in Texas. (*Id.* ¶¶ 18–19.)

---

[4] D. Bradley Keith appears to be the "David Keith" identified in the complaint.

[5] Aircraft Service does not challenge personal jurisdiction. Instead it seems to concede that it has a business presence in Ohio and, in particular, in this district. (Keith Decl. 1 ¶ 11.)

In opposition, Larion argues that where, as here, the Court determines venue without a hearing, plaintiff need only make a *prima facie* showing that venue is proper. (Opp'n at 78–79 (citing cases).) In his own declaration, Larion claims that his employment was "never assigned or located in Texas[,]" and that his "office location was in Ohio." (Larion Decl. ¶¶ 8, 10.) He supplies a copy of his business card showing his business address as Cleveland, Ohio.[6] (*Id.* ¶ 11 and Ex. 1.) Keith, however, attests that defendant's Cleveland operation "consists only of ground operations with no corporate offices and no corporate leadership or administrative personnel[,]" and, although Larion's business card shows the address of the Cleveland operation, he never had an actual office there (nor did anyone) and Larion's job duties had no specific tie to Cleveland. (Keith Decl. 2 ¶¶ 3–4.)

Larion claims that all of Aircraft Service's internal human resources documents list his location as "Remote OH" (Larion Decl. ¶ 14); he supplies no documentary support for that assertion. He also claims that neither Keith nor Redmond, who allegedly were involved in the decision to terminate him, live in Texas, and only one of them has an office in Texas. (*Id.* ¶¶ 21–22.) He further claims that "[t]he majority of the safety report outlined in [his] complaint was written in Ohio (the minority of the report was written in Baltimore, Maryland)." (*Id.* ¶ 23.) Finally, Larion asserts that he had "many weekly standing calls which [he] took from [his] office in Ohio via phone, web or video[,]" that he "did not have an office in Texas and typically used a conference room[,]" and that he "was terminated over the phone while [he] was in Ohio." (*Id.* ¶¶ 15, 19, 25.)

---

[6] Keith, in his first declaration, supplies his business card (identical in style to plaintiff's) showing his address as Fort Worth, Texas. Since Keith relied on his business card as proof of his office location, it is appropriate for Larion to do the same.

6

In reply, Aircraft Service denies most of Larion's factual assertions. It insists that, although Larion was permitted to work from Ohio,[7] "it [was] expected that he would travel to corporate headquarters in Dallas frequently in order to perform his work duties, including regular meetings with Company executives located in Dallas." (Keith Decl. 2 ¶ 5.) Two critical witnesses, Director of Human Resources (Martin Harrell) and Director of Health and Safety (Robert Schwartz), neither of whom has ever traveled to Cleveland in the course of performing their job duties, both live in the Dallas area and maintain offices in the Dallas headquarters. (*Id.* ¶¶ 6–7.) Keith, Larion's direct supervisor, travels to Dallas frequently to perform his job duties, including those relating to Larion's employment. (*Id.* ¶ 8.) During the time Keith was Larion's direct supervisor, he never traveled to Cleveland, and traveled to Dallas 23 times. (*Id.* ¶¶ 9–10.) Similarly, Redmond is based out of Dallas and maintains an office there; during the relevant time period, Redmond traveled to Dallas 52 times and never traveled to Cleveland. (*Id.* ¶¶ 11–13.) The substance of the report written by Larion pertains to Aircraft Service's Baltimore facility, not the Cleveland facility. (*Id.* ¶ 14.)

Neither side has identified any case with similar facts to guide this Court's analysis of the propriety of venue here. The Court notes that "[v]enue requirements exist for the benefit of defendants[.]" *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) (citation omitted). "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district, having no real relationship to the dispute.'" *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Interpreting § 1391(b), the Supreme Court has remarked:

---

[7] Keith states that plaintiff was permitted "to work *from home* in Cleveland[.]" (Keith Decl. 2 ¶ 5; *see also* Keith Decl. 1 ¶ 15.) But there is nothing in the record to suggest that Larion physically worked out of his residence (*i.e.*, his "home"). Larion attests that his residence, at all relevant times, was in Brunswick, Ohio. (Larion Decl. ¶ 4.) He claims that his office location is identified on his business card, which shows a Cleveland address. (*Id.* ¶¶ 10–11 and Ex. 1.)

7

> The statute allows venue in "the judicial district . . . in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts. *Denver & R. G. W. R. Co. v. Railroad Trainmen,* 387 U.S. 556, 560, 87 S. Ct. 1746, 1748, 18 L. Ed. 2d 954 [1967]. Rather, it restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"—*i.e.,* both of them—"or to the witnesses who are to testify in the case." S.Rep.No.1752, 89th Cong., 2d Sess. 3 (1966). *See Denver & R. G. W. R. Co., supra,* at 560 [ ]. *See also Brunette Machine Works v. Kockum Industries,* 406 U.S. 706, 710, 92 S. Ct. 1936, 1939, 32 L. Ed. 2d 428 [1972]. In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim. *Cf. Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 493–494, 93 S. Ct. 1123, 1128–1129, 35 L. Ed. 2d 443 [1973].

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 184–85, 99 S. Ct. 2710, 2717, 61 L. Ed. 2d 464 (1979) (footnotes omitted).

At this juncture, in light of the explanation in *Leroy* that the appropriateness of venue must be judged from the *defendant's* perspective, the Court cannot conclude that Larion made a prima facie showing that venue is proper in this district. That said, the Court also cannot conclude that *dismissal* for improper venue is warranted. Therefore, to the extent Aircraft Service moves to dismiss, its motion is denied, and the Court will turn to a discussion of transfer of venue.

**B.     Motion to Transfer Venue**

Aircraft Service argues alternatively that, even if venue is proper in Ohio (which it does not concede), transfer to the Northern District of Texas would be appropriate for the convenience of the parties and witnesses and in the interest of justice. (Mot. at 37.) Larion, on the other hand,

argues that his choice of forum should not be disturbed, but should be given "great weight." (Opp'n at 80 (citations omitted).)

"[I]n ruling on a motion to transfer under [28 U.S.C.] § 1404(a), a district court should consider the private interests of the parties . . . , as well as other public-interest concerns . . . , which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). Private interests include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).[8] Public interests include: administrative difficulties related to congested dockets; the burden of jury duty on a community that has no relation to the litigation; the local interest in having localized controversies decided at home; and trial in a forum that is at home with the state law that must govern the case. *Id*. at 509. "The party seeking transfer has the burden to prove that the balance of convenience is strongly in favor of transfer." *Nat'l Diagnostic Imaging, LLC v. Med. Care, LLC*, No. 1:15 CV 1945, 2015 WL 6756148, at * 1 (N.D. Ohio Nov. 3, 2015) (citations omitted).

Aircraft Service takes the position that all of the above factors weigh strongly in favor of transfer:

> This case has no connection to Ohio, but it has substantial connection to Texas. In fact, none of the anticipated key witnesses, with the exception of [p]laintiff, reside in Ohio. The majority, if not all except [p]laintiff, are located/work in Texas and would be subject to process in Texas. It would also clearly be extremely

---

[8] *Gulf Oil* was decided under the more stringent *forum non conveniens* standard superseded by § 1404. *Sirak v. J.P. Morgan Chase & Co.*, No. 5:08CV169, 2008 WL 4845950, at *2 (N.D. Ohio Nov. 5, 2008).

> inconvenient, inefficient, expensive, burdensome and disruptive to require the witnesses in this action to travel to Ohio simply because [p]laintiff – and only [p]laintiff – resides in Ohio.
>
> Further, the private factors weigh in favor of transfer because all of the witnesses and sources of proof that "make a trial case easy" are located in Texas. Likewise, the public factors also weigh in favor of transfer because a matter involving employment of a Texas employee should be decided in Texas. Finally, … case specific factors weigh in favor of transfer because all decisions made with regard to [p]laintiff's employment were made in Texas and all related documents and evidence related to [p]laintiff's employment is located in Texas.

(Mot. at 38–39.)

Larion, on the other hand, claims that the "true burden" would be on him because he "would have to secure new Texas counsel and pay for travel to and from Texas for this litigation." (Opp'n at 81.) He also claims that there is an Ohio connection because "the key safety report was written in Ohio and [he] was terminated in Ohio." (*Id.*) But, of particular importance in this case is that, as alleged by Larion, his employment was "terminated . . . in an alleged reduction-in-force." (Compl. ¶ 31.) Regardless of where Larion actually performed his work and/or received notice of his termination, he was employed by an employer headquartered in Texas, and the *decision* to terminate his employment (as well as the *decision* to conduct a reduction in force, if there was one)—the very matters Larion is challenging—would have been made by, or in collaboration with, Aircraft Service's human resources department, which is located at its Texas headquarters. Any records relating to the decision-making process—with respect to Larion's employment specifically and the alleged reduction-in-force generally—are also located there. Larion's argument is unavailing that none of the key witnesses (whom he identifies as Keith and Redmond) *live* in Texas. Both of these potential witnesses are Aircraft Service employees who could certainly be required to appear in Texas and, in any event, have attested that they either frequently travel to, or

are based out of, Texas.[9] Finally, since Larion was employed by a Texas employer, his claim of wrongful discharge in violation of public policy should arguably be decided under Texas, not Ohio, law. Although that is a final determination for another day, if Texas law applies (and this Court thinks it does), then a Texas court, even a Texas *federal* court, is better equipped than this Court to apply Texas law.

The *only* burden Larion has identified is inconvenience (and additional cost) to himself and his attorney;[10] notably, he has made no argument that *his* witnesses or documents are located in Ohio. While inconvenience to Larion is not completely inconsequential, it does not weigh as heavily as the considerations raised by Aircraft Service. In addition, a burden on the plaintiff is not among the key considerations when determining the appropriateness of venue. As explained above by the Court in *Leroy*, where a plaintiff has a choice of venue (which, for purposes of this motion, the Court will assume is the case), the locus of the claim is judged from the perspective of a defendant, not a plaintiff. This is also quite clear from the language of the general venue statute itself.

In the Court's judgment, transfer to the United States District Court for the Northern District of Texas is warranted and, to that extent, Aircraft Service's motion is granted.

---

[9] Since Keith and Redmond are employed by Aircraft Service, arguably, defendant could also be required to make them available in Ohio. As a result, the location of these two witnesses may not be a particularly important factor.

[10] Larion claims he will have to engage a Texas attorney, but he offers no reason why that would be so, other than his personal preference.

## III. CONCLUSION

For the reasons set forth herein, Aircraft Service's motion to dismiss for improper venue (Doc. No. 5, Part 1) is **denied**, and its motion to transfer venue (Doc. No. 5, Part 2) is **granted**. The Clerk is directed to transfer this case to the United States District Court for the Northern District of Texas.

**IT IS SO ORDERED**.

Dated: March 16, 2020

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**